[No. 46012-2-II.   Division Two.   October 27, 2015.]

THE STATE OF WASHINGTON, *Respondent*, v. NICHOLAS BOSTROM THOMPSON, *Appellant*.

*John A. Hays*, for appellant.

*Jon Tunheim, Prosecuting Attorney*, and *Carol L. La Verne, Deputy*, for respondent.

¶1  LEE, J. — Nicholas Bostrom Thompson appeals his conviction of one count of attempted first degree robbery, three counts of first degree robbery, one count of first degree assault, and one count of first degree unlawful possession of a firearm. Thompson contends that the trial court (1) violated his right to be present during trial by removing him from the courtroom because of his disruptive conduct without informing him that he could return if he behaved; (2) violated his right to a speedy trial under CrR 3.3 by granting several continuances of his trial date; and (3) erred in denying his motion to dismiss based on the State's seizure of legal materials from his jail cell. In a pro se statement of additional grounds (SAG), Thompson makes a further allegation of misconduct concerning the confiscation of his legal materials.

¶2  In the published portion of this opinion, we hold that the trial court did not violate Thompson's right to be present because the trial court adequately informed Thompson of the means by which he could return to court. In the unpublished portion of this opinion, we hold that the trial

court did not abuse its discretion in granting the continuances that defense counsel requested and that the trial court did not err in denying the motion to dismiss because Thompson did not demonstrate either misconduct or resulting prejudice with regard to the seizure of his legal materials. Also, we reject Thompson's SAG argument concerning the confiscation of additional property because he fails to establish prejudice. Accordingly, we affirm Thompson's convictions.

## FACTS

¶3 Late one evening, Thompson approached a group of high school students, two of whom were sitting in a car. Thompson pulled out a gun and ordered the students to surrender their possessions. Three of them handed over backpacks and other items, while the two girls in the car closed and locked the doors.

¶4 After looking through the items, Thompson demanded the car. When one of the boys protested and tried to get the gun, Thompson shot him in the abdomen. The other boys wrestled Thompson to the ground and held him until the police arrived. The State charged Thompson with four counts of first degree robbery while armed with a firearm and one count each of first degree assault while armed with a firearm, first degree unlawful possession of a firearm, and possession of a stolen firearm.[1]

¶5 When Thompson's trial began on January 28, 2014, he wore a leg restraint. Before testimony began on February 3, jail personnel asked for increased restraints due to an altercation at the jail involving Thompson. After a hearing on the matter, the trial court authorized the placement of a stun device under Thompson's clothing.

¶6 Later that same day, after the State asked a witness about her credentials, Thompson pushed over the counsel

[1] The trial court dismissed the stolen firearm charge on the State's motion at the end of trial.

table at which he was seated, yelled several profanities, and struggled with corrections officers before being subdued and removed from the courtroom. When he returned in handcuffs, shackles, and a belly chain, the trial court ruled that he would be taken to another courtroom where he could attend the trial via a video feed. The trial court informed Thompson that he would have the right to reclaim his presence if he assured the court that his behavior would improve. Specifically, the court stated:

> And, of course, Mr. Thompson has the right to reclaim his ability to be present in court upon a real assurance that his conduct will improve and that he will not be verbally or physically disruptive.

4 Verbatim Report of Proceedings at 724. The trial court also explained that it would recess the trial after the direct examination of each prosecution witness so that defense counsel could consult with Thompson before the proceedings continued.

¶7 Three witnesses then testified. Before the trial recessed for the day, the trial court reminded Thompson that he could return to the courtroom the following day if he agreed to behave. Thompson was instructed to inform his attorney or corrections staff of his decision.

¶8 On February 4, the trial court noted that it would not further inquire into Thompson's desire to return to the courtroom because it had explained the procedure by which he could return the day before and had heard nothing from him. After the State rested, Thompson declined to testify, and the jury retired to deliberate at the end of the day.

¶9 On February 5, the jury found Thompson guilty as charged except for count I, where it returned a verdict on the lesser included offense of attempted first degree robbery. The jury also found, by special verdict, that Thompson committed all of the offenses (except the firearm possession) while armed with a firearm, and that he committed the offenses shortly after being released from incarceration.

¶10 The trial court imposed an exceptional sentence of 765 months supported by (1) the jury's finding that Thompson committed the offenses after his recent release from incarceration and (2) the trial court's own finding that Thompson's high offender score resulted in some of his offenses going unpunished. Thompson appeals his convictions.

## ANALYSIS

¶11 Thompson argues that the trial court denied his right to be present at trial by removing him from the courtroom for the final three days of trial without informing him daily that he could return if he conducted himself properly. We disagree.

¶12 A criminal defendant has a constitutional right to be present in the courtroom at all critical stages of the trial. *State v. Irby*, 170 Wn.2d 874, 880, 246 P.3d 796 (2011); *State v. Chapple*, 145 Wn.2d 310, 318, 36 P.3d 1025 (2001). This right derives from the constitutional right to confront adverse witnesses and the Washington rules of criminal procedure. *Chapple*, 145 Wn.2d at 318; CrR 3.4(a). Whether a defendant's constitutional right to be present has been violated is a question of law that we review de novo. *Irby*, 170 Wn.2d at 880.

¶13 The right to be present is not absolute. *Chapple*, 145 Wn.2d at 318. A defendant's persistent, disruptive conduct can constitute a voluntary waiver of the right to be present in the courtroom. *Illinois v. Allen*, 397 U.S. 337, 343, 90 S. Ct. 1057, 25 L. Ed. 2d 353 (1970); *State v. DeWeese*, 117 Wn.2d 369, 381, 816 P.2d 1 (1991). Once lost, this right can be reclaimed "as soon as the defendant is willing to conduct himself consistently with the decorum and respect inherent in the concept of courts and judicial proceedings." *Allen*, 397 U.S. at 343.

¶14 A trial court has wide discretion in determining the appropriate means to deal with a defendant's disruptive

courtroom behavior. *Id.*; *Chapple*, 145 Wn.2d at 320. "No one formula for maintaining the appropriate courtroom atmosphere will be best in all situations." *Allen*, 397 U.S. at 343.

¶15 While recognizing that the appropriate method for dealing with a disruptive defendant should be left to the trial judge's discretion, the *Chapple* court set forth basic guidelines to assist trial courts in exercising their discretion. 145 Wn.2d at 320. First, the defendant must be warned that his conduct may lead to removal. *Id.* Second, the defendant's conduct must be severe enough to justify removal. *Id.* Third, the trial court should employ the least severe alternative that will prevent the defendant from disrupting the trial. *Id.* Fourth, the defendant must be allowed to reclaim his right to be present upon assurances that his or her conduct will improve. *Id.* These guidelines are intended to ensure that trial courts exercise their discretion in a manner that affords defendants a fair trial while maintaining the safety and decorum of the proceedings. *Id.*

¶16 On appeal, Thompson takes issue only with the trial court's application of the fourth guideline. He urges this court to adopt a new rule of law providing that whenever a defendant is removed from the courtroom for contemptuous behavior during trial, the trial judge must inform the defendant on each new day of trial that he may return upon a promise of appropriate behavior. Thompson asserts that the trial court violated his right to be present in the courtroom by removing him from February 3 to 5 without informing him each day of the conditions upon which he could return. We see no violation of Thompson's right to be present on this record and no need to impose a requirement that a defendant be reminded daily about how he can reclaim his right to be present in the courtroom.

¶17 Thompson's outburst, which included overturning the counsel table, yelling profanities, and struggling with corrections officers, occurred at the beginning of the fourth day

of trial on February 3. When the trial court removed him from the courtroom to observe the rest of the day's proceedings via a video feed, it reminded him that he could return if he assured the court that he would behave. At the end of the day, the trial court again reminded Thompson that he could return to court upon assurances that his conduct would improve. At the beginning of trial on February 4, the trial court stated that it would not further inquire into Thompson's absence because it had made clear the procedure by which he could return to court the previous day and had heard nothing from him. The jury began deliberating at the end of the day and returned its verdicts on February 5.[2]

¶18 Contrary to Thompson's assertions on appeal, the record does not show that the trial court barred him from the courtroom for three days without explanation. Rather, the record reveals that the trial court made certain that Thompson understood the rules by which he could return to court and that Thompson voluntarily declined to be present during the final three days of trial. We see no violation of the *Chapple* guidelines. Nor do we see that additional guidelines are necessary to protect a defendant's right to be present at trial.

¶19 Trial courts must clearly inform a defendant who has been removed from the courtroom for disruptive behavior of his right to return to the courtroom and the way in which he may exercise that right. This requirement preserves the defendant's right to be present as well as the trial court's discretion in maintaining the safety and decorum of the courtroom. Here, the trial court clearly informed Thompson of both his right to return and the manner in which he could exercise that right. We decline to impose an additional requirement of a daily reminder. Accordingly, we affirm his convictions.

---

[2] The record does not support Thompson's assertion that the trial court brought him into the courtroom on February 4 to inquire about his desire to testify without addressing his right to be present for the rest of the trial. The inquiry about Thompson's possible testimony took place via the video feed.

¶20 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

BJORGEN, A.C.J., and MAXA, J., concur.

Review denied at 185 Wn.2d 1012 (2016).